



1  Patricia L. Woods
   P.O. Box 93896
2  Las Vegas, Nevada 89193
   Phone No: 702-552-0207
3  **Plaintiff in Pro Per**

4                    **UNITED STATES DISTRICT COURT**
5                    **EASTERN DISTRICT OF CALIFORNIA**

6

7  PATRICIA L. WOODS,                        **CASE ACTION NO: 2:17-CV-00793-**
                                             **GEB AC PS**
   Plaintiff,
8        vs.
                                             **AMENDED CIVIL RIGHTS**
9  STATE OF CALIFORNIA, CALIFORNIA           **COMPLAINT FOR RACE,**
   DEPARTMENT OF CORRECTIONS AND             **DISCRIMINATION PURSUANT TO 42**
   REHABILITATION (CDCR), AND NAMED          **U.S.C. § 1981, 1985 and 1986; BREACH**
10 DEFENDANTS ROBERT STORMS, STAFF           **OF THE LABOR UNION CONTRACT**
   SERVICES MANAGER II AND LARRY NORRIS,     **AGREEMENT AND PROVISIONS,**
11 STAFF SERVICES MANAGER IIII (CDCR),       **SERVICE EMPLOYEES**
   STATE OF CALIFORNIA, PUBLIC EMPLOYMENT    **INTERNATIONAL UNION, (SEIU),**
12 RELATIONS BOARD, (PERB), AND NAMED        **AND CONTRACT PROVISIONS**
   DEFENDANTS EILEEN POTTER, AS FORMER       **RELATED TO VIOLATIONS UNDER**
13 CHIEF ADMINISTRATIVE OFFICER OF PERB;     **STATUTORY LAWS OF THE RALPH**
   WENDI L. ROSS, FORMER ACTING GENERAL      **C. DILLS ACT, (GOV. CODE SEC. 3512**
14 COUNSEL AND CURRENT DEPUTY GENERAL        **et seq.) AND INJUNCTIVE RELIEF**
   COUNSEL AT (PERB).                        **AND DAMAGES**

15

16                                           **JURY TRIAL DEMAND**

17

18                    **INTRODUCTION TO COMPLAINT**

19         1.      Plaintiff, PATRICIA L. WOODS, a female of Afro-American descent, and a resident of the

20 State of Nevada, complains and hereby alleges of the Defendants STATE OF CALIFORNIA, CALIFORNIA

21 DEPARTMENT OF CORRECTIONS AND REHABILITATION (hereinafter "CDCR"), and named

22 Defendants, ROBERT STORMS, Staff Services Manager II and LARRY NORRIS, Staff Services Manager

23 III and STATE OF CALIFORNIA, PUBLIC EMPLOYMENT RELATIONS BOARD (hereinafter "PERB),

24 and named Defendants EILEEN POTTER, as former Chief Administrative Officer of PERB and WENDI L.

25 ROSS, former Acting General Counsel and current Deputy General Counsel at PERB that they unlawfully

26 committed discriminatory acts and practices against her based on her actual or perceived race, national

27 origin, ethnicity and/or descent as well as discrimination and retaliation in breach of contract and violation of

28 her union contract agreement, Service Employees International Union Local 1000, (SEIU), contract

   agreement and provisions related to the statutory laws of contract and of the Ralph C. Dills Act, with the use

of systemic prejudice, biases, retaliation, and disparate treatment during her employment and probationary period with CDCR and at PERB during its administrative hearing process, including the use of unfair policies, practices and procedures that subjected her to a "highly-charged" racially discriminatory administrative hearing process at PERB.

2.      In addition, CDCR and PERB failed to enforce the required provisions of her state's (SEIU) labor union contract agreement provisions related to the statutory laws of the  Ralph Dills Act, Gov. Code sec. 3512 et seq., and other state statutes, state laws, rules and governmental regulations that were negotiated between CDCR and SEIU, and that such non-contractual and breach-of-contract performance by CDCR and PERB constituted discrimination and denied the plaintiff's equal protections under the law, including violation of 42 U.S.C.§§1981, and that PERB also engaged in a civil conspiracy acts under 42 U.S.C.§§1985 and 1986 against the Plaintiff.

In said Section §§1981 it is clearly set forth that its statutory intent is to protect U.S. citizens from governmental discrimination and to ensure for equal protections under the law as follows:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."]

3.      The Plaintiff has been engaged in a very highly intense legal battle of over nine years against the State of California, CDCR and the Public Employment Relations Board PERB, for a settlement of her case with and through the California state courts system with initially four appeals before the U.S. Supreme Court.

4.      The Plaintiff has been asking that the state courts to <u>actively engage in a judicial review of her case on its merits,</u> acknowledging CDCR and PERB's wrongdoings of discriminatory and illegal practices in applying or not applying state and federal laws, state statutes and state regulations to the Plaintiff's case before PERB.

5.      Also, there has been newly discovered evidence, <u>discovered within less than one year ago,</u> that shows in fact that there was critical information and vital evidence needed by Plaintiff to win and defend her case against PERB during her hearings and appeals at PERB, which were intentionally and deliberately withheld by PERB's legal and administrative hearing staff, and that this evidence further shows that PERB engaged in discriminatory actions of civil conspiracy, engaged in conflict-of-interests in hearing of the Plaintiff's case, and that there was a monetary conflict-of-interest by PERB's legal and administrative hearing staff in the Plaintiff's case.  This vital information and evidence was highly concealed from the Plaintiff; and, that PERB was engaging in several ongoing series of "cover-ups" thereby forcing the Plaintiff

to incur unnecessary and endless legal costs and a substantial expenses and time in litigating this case and further forcing her to engage in unnecessary and senseless ligation throughout all the California state appellant courts and to the U.S. Supreme Court.

6.    Further, the newly discovered evidence also shows that PERB and its employees, as herein below described, specifically conspired jointly and among themselves, and acted in furtherance of said civil conspiracy, to conceal, with non-disclosure to the Plaintiff, other critical evidence that shows discriminatory practices at PERB and discriminatory conduct by PERB's legal and administrative hearing staff as well as others legal attorneys practicing in and at the California Department of Human Resources (CalHR), formerly known as the Department of Personnel Administration, and that this evidence was a "direct proximate cause" of the Plaintiff's filing otherwise unnecessary legal motions, and causing her to expend a substantial amount of time, money and undue energy exhausting and appealing all of her PERB's administrative decisions and appeals for a period of six years before all of state's appellant courts and these conspiracy acts by PERB and other state actors; all in direct violation of 42 U.S.C. 1985 and 1986.

7.    On August 31, 2016, at the request of PERB, the Plaintiff filed with PERB, her fully briefed Preliminary Complaint, setting forth the similar and same causes of action that have been litigated throughout the state courts by the Plaintiff along with newly discovered material and critical evidence of non-disclosure to the Plaintiff by PERB during and at the time of the Plaintiff's hearings and appeals with PERB, and while the Plaintiff was litigating against PERB before the California Court of Appeals, Third Appellate District, the California Supreme Court and multiple times before the U.S. Supreme Court. (A true copy of the document is hereby attached as Exhibit 1.)

8.    On October 7, 2016; October 3, 2016; September 30, 2016; August 31, 2016; April 10, 2014; January 9, 2014 and December 18, 2013, the Plaintiff and the PERB made several failed attempts to reach a settlement agreement for settlement of this legal matter, despite the fact, that PERB insisted that the Plaintiff file with them a Preliminary Complaint and a Demand Letter prior to her pursuing of any further legal litigation against the State of California and PERB in a federal court for pre-filing settlement discussions.  (A true copy of the document is hereby attached as Exhibit 1.)

9.    On October 24, 2016, the Plaintiff filed with the State of California, Department of General Services, Government Claims Program, (GCP), her notice for legal claims and actions for damages against the State of California to meet her due diligence requirements of prior notice to the State of California that she would filing of her civil rights claims for damages under Section 42 U.S.C. §§1981, 1985 and 1986.

10.    On December 30, 2016, GCP denied the Plaintiff's claims for any damages against the State of California due to alleged claims time limitations and notified the Plaintiff that no further actions of her

claims against the State of California would be considered by their office. This allowed for the Plaintiff to commence with her legal actions against the State California, CDCR and PERB with this Court. (A true copy of the document is hereby attached as Exhibit 2.)

11.     Neither of the parties has been able to reach a legal agreement for settlement of this case and the parties have reached a legal impasse as of this date. The Plaintiff believes that the only way this legal matter can be disposed of and settled is through the federal court's jurisdiction and by a federal judge's intervention.

12.     On April 14, 2017, in order to remedy violation of her equal protection and due process rights under the Fourteenth Amendment to the United States Constitution, the Plaintiff now stands before U.S. District Federal Court, Eastern District of California alleging federal claims for discrimination under in violation of 42 U.S.C. §§ 1981, 1985, 1986 and 2000 et seq. along with a state claim for violations in Breach of Contract of her state's union (SEIU) contract agreement and provisions and violations under the statutory laws of the Ralph C. Dills Act, (Gov. Code sec 3512 et seq.) against CDRC and PERB.

13.     The Plaintiff stands ready to retain legal counsel to work with the Court to seek a settlement of this case and to avoid further litigation before the Court, if both parties can reach an agreement.

## GENERAL ALLEGATIONS PERTAINING TO ALL CAUSES OF ACTION

14.     This case is brought for violations of the civil rights of the plaintiff, Patricia L. Woods, a female of Afro-American descent, and a resident and citizen of the State of Nevada (hereinafter sometimes referred to as "Woods"), to equal protection and due process of law under the Fourteenth Amendment to the United States Constitution, and a claim for discrimination, retaliation and civil conspiracy under the violations of 42 U.S.C. §§ 1981,1985, 1986 and 2000 et seq. along with a state claim for violations in Breach of Contract of her state's union (SEIU) contract agreement and provisions and violations related to the statutory laws of the Ralph C. Dills Act, (Gov. Code sec 3512 et seq.) against CDCR and PERB. Except where otherwise specified, all violations of Plaintiff's legal rights complained of herein were motivated and proximately caused by her race. As a citizen of the State of Nevada, she is entitled to have Nevada law applied to the non-federal issues in this case including the law of immunities.

15.     This is a suit to enjoin and seek damages for unlawful actions and discrimination by the State of California, California Department of Corrections (CDCR), (hereinafter "CDCR"), which is responsible for the state's corrections operations, state prisons and the parole systems, and Public Employment Relations Board, (hereinafter "PERB"), is a quasi-judicial administrative board charged with implementing various provisions of state agencies' collective bargaining agreements, operating as an administrative law court, reviewing complaints for violations of state statutes, state laws, state employees' union contract agreements and pertaining other administrative functions. The PERB is vested with the

1  statutory authority to enforce the provisions of the state's union contract agreement under violations of the

2  Ralph C. Dills Act, (Gov. Code, sec. 3512 et seq.).

3      16.    The Defendants CDCR engaged in discriminatory practices of a wrongful termination of the

4  Plaintiff during her employment with CDCR and during her probationary period in violation of her law rights

5  under 42 U.S.C. §§ 1981, and committed wrongful acts that constituted discrimination and denied the

6  plaintiff's equal protections under state and federal laws.

7      17.    Further, CDCR failed to enforce the legal terms of the plaintiff's labor union contract

   agreement and provisions between CDCR and her labor union, SEIU. In addition, CDCR for reasons based

8  on racial discrimination against Plaintiff, violated the plaintiff's union rights under the statutory laws of the

9  Ralph C. Dills Act, (Gov. Code sec 3512 et seq.), other state laws, rules, and government codes and

10 regulations. Further, said Defendants subjected the plaintiff to a hostile work environment and engaged in

   retaliatory actions against the plaintiff for her decision to seek union representation and assistance from her

11 union, SEIU.  In addition, CDCR, subjected the plaintiff to unfair and disparate treatment based on her union

12 rights and discriminated against her based on her actual and/or perceived race, national origin, ethnicity

13 and/or descent during her employment with CDCR and during her rejection of probationary period with

14 CDCR.

15     18.    Defendant PERB and its Defendant agents engaged in discriminatory conduct which resulted

16 in rendering unlawful false and fraudulent administrative rulings, decisions, and appeal decisions, as well as

   intentionally failing to apply the required federal and state laws, state regulations, rules, governmental codes,

17 and procedures to the plaintiff's case decisions; as well as making false representations of their

18 administrative decisions and rulings publicly, and posing those bogus decisions multiple times to statewide,

19 national and international Internet websites and other state public media forums.

20     19.    Further, PERB engaged in discrimination, retaliation and civil conspiracy acts against the

21 Plaintiff in violation of 42 U.S.C. §§ 1981, 1985, and 1986; including the failure to enforce the legal terms of

22 the plaintiff's labor union contract agreement and provisions between CDCR and her labor union, SEIU. In

23 addition, PERB violated the plaintiff's union rights under of the statutory laws of Ralph C. Dills Act, (Gov.

   Code sec 3512 et seq.).

24

25     20.    Further, the plaintiff was subjected to disparate treatment by PERB in violation of

26 unconstitutional state laws in violating her U.S. Constitutional rights under the Fourteenth Amendment

   requiring her to submit to an unlawful administrative hearing process by the State of California, under PERB,

27 that did not afford her adequate state appeal rights that are afforded to other citizens of the same state, who

28

are not forced and mandated into an unfair and discriminatory administrative hearing process by PERB; and plaintiff was subjected to unfair and disparate treatment.

21. Further, the plaintiff was denied her due process and equal protection rights to and throughout the PERB's administrative hearing and appeal process as well as having her case heard before and/or appealed through a "highly-charged" and prejudicial hearing process administrated by PERB; based on her actual or perceived race national origin, ethnicity and/or descent. The plaintiff further contends the administrative hearings and appeal process were discriminatory in nature, flawed with judicial discrimination, and prejudice which discriminated against her.

22. The plaintiff alleges that she was denied access to having her PERB administrative decisions reviewed or heard on the merits by any of the state's Superior Courts and from having a Superior Court judge render a final legal determination as to the state and federal law violations against her, and the state and federal constitutional issues related to her case before PERB.

23. The plaintiff alleges that her federal constitutional and equal protection rights were violated by the State of California state laws and/or regulations that created the agency PERB, which denies the plaintiff, and other plaintiffs similarly situated, the rights to have their PERB administrative appeals decisions taken directly into the state's Superior Courts, normally having such jurisdiction, to be reviewed and heard.

24. Plaintiff further contends that PERB's statutes and regulations that denied her access to the state Superior Courts in California are defective in nature, discriminatory in nature and in violation of her state and federal constitutional and equal protection rights under the U.S. Constitution.

25. Whereas, in similar cases of other citizens of the State of California, these citizens have access to the state's Superior Courts to challenge their state administrative appeals and are not barred from taking their cases and administrative appeals directly into any of the state Superior Courts, especially those with the same and similar administrative appeals from other California state agencies.

26. The plaintiff alleges that by being barred from having her PERB's appeal case heard in all California Superior Courts, it thereby allows PERB to unconstitutionally do away with her federal and state rights and issues not heard and/or addressed during the PERB's administrative hearing proceedings. Further, PERB forced the plaintiff to participate in an unconstitutionally, "separate but not equal" quasi-judicial hearing process administrated by PERB while at the same time discriminating against the plaintiff by the law and based on her actual or perceived race, national origin, ethnicity and/or descent.

27.     Because PERB's statutory regulations are also flawed, discriminatory in nature and are unconstitutional in nature, the plaintiff was forced to appeal her administrative decisions directly to the California Third Appellate Court, California Supreme Court, and then on to the U.S. Supreme Court. **This plaintiff went through the entire four years of PERB's administrative hearing process without having the benefit of having either of the state's Appellate Court and the California Supreme Court, nor the U.S. Supreme Court reviewing her PERB decision on its merits for the state and federal constitutional violations of the rights to equal protection and due process under the law.** Further, by law, the plaintiff was required to exhaust all her administrative legal remedies before PERB, prior to filing of this Complaint with this Court by the law.

## JURISDICTION

28.     This action arises under the United States Constitution and other federal statutes over which this Court has jurisdiction.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, (a) (1-4), which confers original jurisdiction on this court of any civil action to recover damages or to secure equitable relief under the Constitution, treaties, or any Act of Congress, including those providing for the protection of civil rights, 42 U.S.C. § 1981, 1985 and 1986, and supplemental jurisdiction over the state law claim pleaded in this complaint pursuant to 28 U.S.C. § 1367.

## VENUE

29.     Venue is proper in this Court over all defendants pursuant to 28 U.S.C. § 1391 and due to the federal questions as between the plaintiff and the defendants.  Also, there is a federal question of diversity of citizenship under the U.S. Constitution, *Art. III, § 2,* among, and between the current parties and/or other plaintiffs to be joined to this cause of legal action under as a class action, if settlement cannot be reached between the parties.

30.     Venue is also proper in the Eastern District of California since this Court has jurisdiction over the subject-matter of this action and further a substantial amount of the events that have occurred in this case arose both within the federal jurisdictions of the State of California federal court and the State of Nevada federal court, which has created a diversity of jurisdiction of several federal questions that will before this Court.

31.     A federal question related to the Defendants' rights to allege sovereign immunity defense, in light of the Plaintiff's Nevada state's rights, to be inserted in this case under the U.S. Supreme Court landmark decision and the Nevada's State Supreme Court decisions in the case of California Franchise Tax Board v. Hyatt, 538 U.S. 488 (2003), Hyatt v. Franchise Tax Board, Case No. A382999 (Dept. 9, Las Vegas, Nev. 2008), including the federal question of the State of California CDCR and PERB being tied to the

federal waiver of sovereign immunity in receipt of federal funds, which prohibits the State of California and its governmental agencies from engaging in discriminatory practices and wrongful conduct involving the plaintiff's federal constitutional rights

## **PLAINTIFF**

32.    Patricia L. Woods is currently the sole named plaintiff is this cause of action against CDCR and PERB, (hereinafter referred to as "Plaintiff"). The Plaintiff is a citizen of the United States and a legal resident and citizen of the State of Nevada.

## **NAMED DEFENDANTS**

33.    The State of California, California Department of Corrections and Rehabilitation, (hereinafter "CDCR"), and named Defendants Robert Storms, (hereinafter "Storms"), is sued herein in his former and/or current official capacity as Staff Services Manager II and Larry Norris, (hereinafter "Norris"), is sued herein in his former and/or current official capacity as Staff Services Manager III, (CDCR), the State of California, Public Employment Relations Board (hereinafter "PERB"). EILEEN POTTER is sued herein in her former official capacity as Chief Administrative Officer of PERB and WENDI L. ROSS is sued herein in her former official capacity as Acting General Counsel and in her current official capacity as Deputy General Counsel at PERB.

34.    There are additional defendants that Plaintiff anticipates will be identified in the course of discovery, to be joined to this case for civil rights and discrimination violations for engaging in a civil conspiracy and other unconscionable acts against the Plaintiff at PERB and/or through other state agencies as state actors. All references herein to the named agencies incorporate by reference that the named Defendants were at all times in administrative authority and/or control of the agencies or in the agency's division for supervision at the time involved with the discriminatory practices or actions committed against Woods.

## **CLASS ACTION ALLEGATIONS**

35.    Plaintiff anticipates that through the effective discovery, investigative and inspections of PERB's hearing and appeal records under the court's subpoenas process, that Woods will join other plaintiffs to this case to effectively create a separate class action matter against PERB.

36.     Woods anticipates instituting a separate class action in this case pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all other class members.  This class action will consist of all parties alleging that they were subjected to the unfair hearing practices, discrimination by law, the unconstitutional hearing proceedings of PERB's, and/or to be named in this cause of action.  It will also provide other proof that plaintiffs were similarly barred from taking their PERB administrative hearing decisions and/or final appeal decisions into any of the state Superior Courts for a review of that PERB's decision on merit.

37.     Common questions of law and fact exist as to all members of the class action and predominate over any questions solely affecting individual members of the class. Among the questions of law and fact common to the class are whether defendants violated the Fourteenth Amendment to the United States Constitution, and federal laws for discrimination against certain plaintiffs based on discriminatory conduct, and intentional tort actions, and whether they will continue to do so.

38.     Whereas, in PERB cases, the same and similar class members should be denied the access to the California state's Superior Courts for their state administrative appeals before PERB and barred from taking their cases and administrative appeals directly into any of the state Superior Courts, especially those with the same and similar administrative appeals from other California state agencies.

39.     Inclusion of the class members will be that they have been discriminated against by PERB during, and at the same time, that Plaintiff Woods' hearing procedures and appeals were occurring at PERB, unless the Court expands the class parties to include all other parties, named or unnamed to date, inclusive.

40.     It is only through the discovery process that the Plaintiff will be able to determine the class action parties' names, case descriptions, case depositions and all other pertinent information from PERB to determine whether there are other plaintiffs and/or victims, in the same and/or similar situation as this Plaintiff for a class action motion to join those parties to this cause of action.

41.     If such a class action is filed, the plaintiffs will seek to maintain a Subclass pursuant to Rules 23(b) (2) to determine whether defendants engaged in unlawful discrimination practices and whether defendants should be enjoined from continuing their discriminatory policies.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

42.     As stated in the Court of Appeal of the State of California, Third Appellate District's administrative record:

"On September 10, 2007, CDCR, Division of Adult Parole Operations, appointed the plaintiff to the position of Associate Governmental Program Analyst in its Crisis Placement Unit.

The plaintiff has enjoyed a distinguished career in state government and has received numerous letters of recommendation, highly rated appraisals, and letters of reference from her other supervisors contesting to her hard work, job performance, work ethics, and her excellent government service. She had an unblemished work history with the State of California, with no prior problems with any of her past employers and/or supervisors.

43.    As of mid-November 2007, plaintiff had close to eleven (10.835) years of state service. Plaintiff had no prior terminations, probation period rejections, reprimands, or any other disciplinary actions while in state service.

44.    Even though plaintiff was a permanent, full-time civil servant with the State of California, the policy is that each time any state employee transfers from one state department to another in a new civil service classification, lateral or otherwise, they must serve a new probationary period as specified for that classification. In plaintiff's case, she had a six-month probationary period tied to her new classification as an Associate Governmental Program Analyst (AGPA). State law and regulations also require, however, that a probationary employee be issued periodic written performance evaluations/probationary reports, specifying any perceived defects in conduct and thereby given an opportunity to improve said conduct, before being subject to termination of employment. After serving less than three months in her new classification, Plaintiff was rejected on probation and her employment was terminated. As a direct result of discrimination against Plaintiff based on her race, Plaintiff did not receive, prior to said termination, the periodic performance evaluations required by the regulations, nor the concomitant opportunity to modify her work performance to meet the employer's alleged objections thereto. Moreover, in the course of the proceedings leading to the termination of Plaintiff's employment, Plaintiff evoked her rights under the said Ralph C. Dills Act to representation by her labor union, SEIU, by having a union representative involved with communications with Plaintiff's managers. (A true copy of the document is hereby attached as Exhibit 3.)

45.    Plaintiff thereafter challenged the said termination of her employment through administrative proceedings before the PERB, the forum mandated by state law. During the PERB's administrative hearings the plaintiff's two immediate supervisors from CDCR testified under oath, that the plaintiff Woods was the only employee in their unit to be terminated by them without being issued the required state probationary reports during the probationary period with CDCR. The plaintiff Woods, was in fact, the only professional employee of Afro-American descent working in their unit to exercise her union rights under the Ralph C. Dills Act at the time of her untimely rejection on probation and she was the only professional employee in their unit to report CDCR's regulatory and union violations to her union, SEIU. (A true copy of the document is hereby attached as Exhibits 3 and 4.)

46.    Further: Plaintiff Woods was the only professional Afro-American female employee working in her unit at the time, and was not issued the required probationary report by her two immediate supervisors, Storms and Norris both of whom were white. While on the other hand, all the other professional

employees working in the plaintiff's same work unit who were all white professional employees, were issued their required probationary reports; and/or as the two supervisors testified at the PERB hearings, they did issue "sporadic probationary reports" to the white employees, while there was no probationary report issued to Plaintiff Woods. In either case, where probationary reports were issued to the white employees working in their same work unit as Woods, none of these white employees were ever terminated by them as supervisors during their employment and/or during their probation periods with CDCR.

47.     Both CDCR's supervisors, Storms and Norris testified before PERB that Woods was the only employee in their unit who was subject to termination on probation without the benefit of being issued her probationary report, which was required of CDCR by statutory law.

48.     Further and prior to the plaintiff Woods' termination from her employment unit at CDCR by her supervisor Norris, he called her into his office and personally remanded her for going to her SEIU union representative for assistance; and she was further told by said supervisor that he had no obligation to meet with her union or to call her union representative back at SEIU, which he refused to do prior to terminating Woods at CDCR. (A true copy of the document is hereby attached as Exhibits 3 and 4.)

49.     On November 27, 2007, CDCR rejected plaintiff during probation and terminated her employment.

50.     Prior to terminating plaintiff, CDCR failed to issue to her the required probationary report, a written evaluation, written letters of warnings, or any other written notices of unacceptable job performance, as required by law.

51.     There are state statutory and constitutional due process rights that were not afforded to the plaintiff by CDCR by way of the SPB and DPA rules, government codes, and statutes, and these rights were not considered as part of the PERB's decision.

52.     The PERB's decision fails to apply the SPB statutory laws and case law to PERB's decision, including the statewide standards governing the rejection on probation for all other state agencies and state employees.  The DPA and SPB rules are as follows:  DPA Rule 599.795, SPB Rules 51-52.5, SPB Rules 321-327, SPB Rule Section 54(4), SPB Rule Section 52.2 and SPB Rule Section 52.8 (c) (d), SPB Rule Section 53.2 (b) and SPB Rule Section 52.3.  Also, there are additional governmental codes and regulations that PERB failed to apply to the plaintiff's case.

53.     Further, the Courts have held that a probationary employee in state government has statutory right to due process.  (See *Anderson v. State Personnel Board*, (1980) 103 Cal. App. 3d 242, 249.)  Even though the probationers' rights are limited, Government Code Section 1917(b) (1) requires state agencies to

inform the probationer of all the reasons for rejections, Brown *v. State Personnel Board*, (1941), 43 Cal. App. 2d 70, 76; *Bryant v. State Personnel Board*, (1950), 96 Cal. App. 2d. 423, 426; *Dorri v. State Personnel Board*, (1951), 103 Cal App. 2d. 49, 50-51; and Joe Nava (1995) SPD Decision No. 31387.

53.     In addition, PERB's decision failed to defer to the California Supreme Court decision of P*acific Legal Foundation v. Brown* (1981) 29 C. 3d 168, 197-198, as its legal basis for applying the SPB's statewide standards, rules, regulations, and policies to the Plaintiff's case.  Plaintiff had raised these issues in her briefs to the PERB Board and in her Exceptions to ALJ Decision.  This was one of the main reasons for the filing of her objections with the Board.[1] . (A true copy of the document is hereby attached as Exhibit 5.)

54.     On December 5, 2007, CDCR conducted a required Skelly Hearing[2] before a CDCR appointed Skelly Hearing Officer.  The Skelly Hearing Officer determined that plaintiff's termination was unlawful, particularly in regard to (a) the absence of prior written warnings of alleged unacceptable performance; (b) the proximity of termination to the union's involvement; and (c) the failure of CDCR to respond to the union representative's letter.  The hearing officer recommended that plaintiff's employment be reinstated (Ibid.).  CDCR refused to comply with its own appointed Skelly Hearing Officer's recommendations. (A true copy of the document is hereby attached as Exhibit 6.)

55.     On December 14, 2007, CDCR affirmed plaintiff's termination and choice to disregard its own state's Skelly Officer's recommendations of not termination of the plaintiff's Woods without the benefit of issuing the required probationary report by law (DPA Rule 59.795).  (A true copy of the document is hereby attached as Exhibit 6.)

56.     Plaintiff was not provided with a report of her performance evaluation, a probationary report, or any other writing to adequately inform plaintiff of her progress on the job during her probationary period (DPA Rule 599.795 and Government Code 19172.)

57.     On December 27, 2007, this Plaintiff filed her Unfair Practice Charge and Complaint with the State of California, Public Employment Relations Board, (PERB), alleging violation of the Ralph C. Dills Act, (Gov. Code, sec. 3512 et seq.), against the California Department of Corrections and Rehabilitation (CDCR), under the provisions of the state's labor union contract agreement negotiated between the (CDCR) and her labor union the Service International Employees Union 1000 (SEIU).

---

1. See PERB's Complaint filed against the California Department of Corrections and Rehabilitation, (CDCR), January 22, 2008, Case No. SA-CE-160-S, (Attached as Exhibit 5.)
2. See *Skelly V. State Personnel Bd.* (1975) 15 Cal.3d 194, which affords permanent public employees the right to a pre-termination hearing. (Attached as Exhibit 6.)

58.     Defendant (PERB) abused its discretion by ruling that the local procedures followed by CDCR in terminating plaintiff's employment afforded plaintiff due process despite those local procedures. This was inconsistent with the plaintiff's union contract agreement provisions (MOU), statewide uniform standards, statutes, government codes and regulations.

59.     The Administrative Law Judge (ALJ) erred in law.  Her ruling was that plaintiff was not entitled to a probationary report from CDCR regardless of the supervisor's claims that other white employees in the same unit did not receive probationary reports which were only being issued to employees "sporadically".

60.     Additionally, the ALJ erred in her decision by failing to ask the CDCR's supervisors to produce clear and convincing evidence showing her that the supervisors were told not to provide a probationary report to Woods.

61.     The statutory and regulatory requirement of a probationary report due her from CDCR served as the basis for her accepting her employment with CDCR and it established a "pre-condition" for her leaving her permanent post and accepting initially probationary employment with CDCR.

62.     Plaintiff contends that she was certainly entitled to her first probationary report prior to her being rejected on probation without having the benefit of improving her behavior with CDCR.

63.     Defendant's interpretation of applicable rules and regulations that said rules and regulations do not require that a probationary employee be given written evaluations or warnings prior to discharge, are clearly erroneous and contrary to law (DPA Rule 599, 795 and Government Code 19172).

64.     The lack of timely notice, constructive criticism and an opportunity to improve before being fired is also at odds with the plaintiff's Collective Bargaining Agreement between CDCR and the relevant labor union, SEIU, of which all employees, including Woods, were beneficiaries, and is further proof of variance from normal standards. Moreover, this lack of timely written notice and a meaningful opportunity to learn from criticism of a probationary employee's work and amend one's behavior is a violation of due process, and is at a level of fundamental fairness and rights embodied in the United States and California Constitutions.

65.     There is no dispute that the CDCR terminated plaintiff's Woods' probationary employment, on November 27, some 77 days after it had begun, without ever having given her a single written notice of its perceived problems with her services. Nor is there any dispute that such was a material, gross variance from statewide established procedures and standards. Yet the PERB's decision against Woods rests entirely on the spurious grounds that statewide procedures and standards supposedly do not apply (to CDCR) and that a

statewide administrative agency supposedly has a right to simply choose to ignore, and not to apply, procedures mandated by state law and regulation.

66.     California law mandates that PERB has exclusive and initial jurisdiction over all unfair practice issues related to collective bargaining rights guaranteed by statute to state government employees. Gov. Code 19172 and DPA Rule 599.795 are incorporated into the applicable Collective Bargaining Agreement between SEUI and CDCR of which Plaintiff is a beneficiary; which guarantees her due process rights.

67.     PERB's decision upholding Plaintiff's termination of employment by CDCR failed to include the statewide SPB's and DPA's statutes, codes and regulations governing the statewide rejection-on-probation process to the extent that these statewide regulations and statutes impact the Dills Act violation.  In so doing, it establishes her unfair practices charges against CDCR at PERB.  The Administrative Law Judge's Proposed Decision failed to apply the required state's statewide laws and regulations to the plaintiff's case.

68.     Further: the State Personnel Board (SPB's) and Department of Personnel Administration (DPA's), rules, codes, statutes, and regulations govern the statewide rejection-on-probation process in this case.  PERB failed to apply those rules, statutes, codes and regulations along with the Dills Act regulations to determine whether there were unlawful retaliatory and racially motives on the part of the employer (CDCR). Thus, PERB failed to protect, and violated, Plaintiff's rights to enter into contracts, and to maintain employment, to the same extent as a White citizen.

69.     Due process is, of course, an issue of fundamental fairness with its roots deeply embedded in the United States and California Constitutions.  As in the case of *Joe Nava,* (1995) SPB Decision No. 31387, the PERB's sister agency, the State Personnel Board, overruled the termination of a probationary employee, whose performance was undisputedly below acceptable standards, was done without his receiving timely written warnings that his work was considered defective, was not given consequent guidance about where he needed to improve, nor an opportunity to do so.  This was *a denial of due process* which required reversal of his termination with an award of reinstatement and back pay.

70.     While the SPB and PERB have jurisdiction over different aspects of the rights of State employees, there is some overlap between those areas of jurisdiction—*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 197-198 --which the courts need to accommodate with regard to such an issue as fundamental as due process, which both underlies and transcends the substantive issues of a legal dispute; what is true in an SPB case must be equally so in the present PERB one.

71.     As stated in Pacific Legal Foundation v. Brown, (1981) 29 Cal. 3d 168, 197-198:

"The State Personnel Board was granted jurisdiction to review disciplinary actions of civil service employees to protect civil service employees from politically partisan mistreatment or other arbitrary action inconsistent with the merit principle. PERB, on the other hand, has been given a somewhat more specialized and more focused task: to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by SEERA. Although disciplinary actions taken in violation of SEERA would transgress the merit principle as well, the Legislature evidently thought it important to assign the task of investigating potential violations of SEERA to an agency which possesses and can further develop specialized expertise in the labor relations field. [Citations and footnote omitted.] Thus, in so far as possible, we should construe the relevant provisions to permit an accommodation of the respective tasks of both the State Personnel Board and PERB".

72.     Further, the PERB also failed to address the non-assurance of Plaintiff's required probationary report. This report is due to her by law. The PERB's decision upholds unlawful practices by the Respondents (CDCR) and unlawfully provides them with an exemption from state law, statutes and regulations for non-issuance of this required report. In so doing, the PERB abused its discretion. By applying their own case law, which usurps SPB's and DPA's statewide rules and regulations, PERB sustains and supports CDCR's unlawfully racially motivated and retaliatory acts taken against plaintiff in clear violation of the Ralph C. Dills Act and Plaintiff's civil rights to be free from racial discrimination in employment.

73.     PERB had exclusive initial jurisdiction and the authority to examine, investigate and hear Plaintiff's entire case, including her "rejection on probation," which was included as part of PERB's unfair practices charges filed against CDCR in its Complaint. It was clearly stated and alleged that CDCR, "took adverse action against the Charging Party (Plaintiff), by issuing her a "Notice of Rejection During the Probationary Period". (A true copy of the document is hereby attached as Exhibit 5.)

74.     PERB's abuse of discretion is derived in large part from the absence of any dispute in this case concerning the fact that during her 77 days of employment by CDCR during which problems were said to have arisen almost immediately, Woods never, until the moment of the termination of her employment, received a single written admonition that her behavior was unsatisfactory and needed drastic improvement.

75.     PERB's procedures are in general, and were in this instance, flawed by the following factor which constituted an egregious conflict of interest on the part of the agency, and denied Plaintiff due process and fundamental fairness:

It has been the practice of the former California Department of Personnel Administration (DPA), now California Human Resources (CalHR) to trade staff attorneys back and forth between PERB, partly on the rationale of "training purposes". Pursuant to this practice, the then-DPA lead staff attorney who had defended Defendants herein NORRIS and STORM in regard to Plaintiff proceeding before the PERB related to the termination of her employment under the Dills Act that is the subject matter of this action, then became a PERB staff attorney for one of PERB's Board member within one month of the

- 15 -
CIVIL RIGHTS AMENDED COMPLAINT

1   Plaintiff's Woods concluding of her administrative hearings before PERB; and was involved in
2   formulating PERB's rulings on Plaintiff's PERB administrative proceeding at administrative appeal levels.

3       76.     This PERB staff attorney failed to disclosure to the Plaintiff and for the PERB's appeals
4   hearing records that she was working on staff at PERB and working under the direct supervision of the
5   PERB's Board member who was ruling against and denying each and every one of the Plaintiff's Woods'
6   critical appeal motions before PERB.  Defendants WENDI L. ROSS and EILEEN POTTER in their official
7   capacities, were aware of this practice and its insidious nature; held the power to eliminate and prohibit the
8   practice, but failed to do so electing instead to allow the practice to continue, all to the detriment of Plaintiff
    and others similarly situated.

9       77.     This practice has been highly concealed from the public, and was concealed from Plaintiff.
10  Plaintiff discovered the truth about it on or about August 30, 2012, when she filed her timely motion with the
11  California Third District Court of Appeal to take Judicial Notice under Local Rule, 8.252, of PERB's wrong-
    doings and to make a factual finding for the Court. However, the Court denied the Plaintiff's motion.

12      78.     Plaintiff's federal constitutional and equal protection rights were violated by the State of
13  California state laws and/or regulations that created the agency PERB, which denies the plaintiff, and other
14  plaintiffs similarly situated, the rights to have their PERB administrative appeals decisions taken directly into
15  the state's Superior Courts, normally having such jurisdiction, to be reviewed and heard.

16      79.     The plaintiff alleges that by being barred from having her PERB's appeal case heard in all
17  California Superior Courts, it thereby allows PERB to unconstitutionally do away with her federal and state
18  rights and issues not heard and/or addressed during the PERB's administrative hearing proceedings. Further,
    PERB forced the plaintiff to participate in an unconstitutionally, "separate but not equal" quasi-judicial
19  hearing process administrated by PERB while at the same time discriminating against the plaintiff on the
20  basis of her actual or perceived race, national origin, ethnicity and/or descent.

21      80.     Because PERB's statutory regulations are also flawed and are unconstitutional in nature, the
22  plaintiff was forced to appeal her administrative decisions directly to the California Third Appellate Court,
23  California Supreme Court, and then on to the U.S. Supreme Court.  This plaintiff went through the entire
    four years of PERB's administrative hearing process without having the benefit of having either of the state's
24  Appellate Court and the California Supreme Court, nor the U.S, Supreme Court reviewing her PERB
25  decision on its merits for the state and federal constitutional violations of the rights to equal protection and
26  due process of law. Further, by law, the plaintiff was required to exhaust all her administrative legal remedies
    before PERB, prior to filing of this Complaint with this Court.
27

28

81.     Plaintiff further contends that for well over twenty years, the California Appellate Courts, (from all six of the Appellate Court Districts), and the California Supreme Court, have systematically, for the most part, and routinely, denied all writ reviews in PERB's administrative appeal cases against the plaintiffs.

82.     This action thus leaves the plaintiffs with no legal remedies and no other alternative for a review of PERB's administrative decisions on the merits.   It further bars this plaintiff and future plaintiffs from utilization of the state's Superior Courts for such reviews of PERB's appeal decisions, for state and federal constitutional violations, equal protection and due process issues under the law, as well as for the plaintiff's civil rights violations under the Fourteenth Amendment for discriminatory practices under the law.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

83.     On December 27, 2007, plaintiff filed an Unfair Practices Charge against CDCR with PERB. On January 22, 2008, PERB issued Complaint No. SA-CE-1640-S, alleging that CDCR violated the Ralph C. Dills Act (Gov. Code, '3519, sub. (a)) in that: (a) plaintiff had exercised rights under the Act by securing the assistance of her union representative; (b) CDCR had knowledge of the exercising of those rights but refused to communicate with the union representative; and (c) CDCR discriminated against plaintiff and imposed the reprisal of rejecting plaintiff's probation and terminating her employment because of the exercise of those rights.

84.     On January 22, 2008, PERB's General Counsel issued a Complaint against CDCR, charging them with violations under the Dills Act and for retaliatory actions against the plaintiff. (Exhibit 5.)

85.     On February 6, 2008, the Complaint was answered by the California Department of Corrections and Rehabilitation (CDRC) admitting that it issued the Notice of Rejection During Probation to plaintiff, denying all substantive allegations, and asserting affirmative defenses.

86.     On May 19-20, 2008, and October 20-22, 2008, PERB held administrative hearings.

87.     On August 24, 2009, the Administrative Law Judge (ALJ) issued a Proposed Decision dismissing the Complaint.

88.     On October 5, 2009, Plaintiff filed a Statement of Exceptions and supporting brief.  Real party filed an opposing brief.  Plaintiff submitted a Reply Brief, which the PERB declined to consider.

89.     On October 12, 2010, PERB issued its Decision No. 2136-S affirming the ALJ's Proposed Decision and dismissing plaintiff's Complaint and underlying Unfair Practice Charge, State of California. (Department of Corrections) (2010) PERB Decision No. 2136-S).

90.     Plaintiff filed a timely Request for Reconsideration. On January 27, 2011, PERB issued its decision denying the request. *Patricia L. Woods v. State of California, Department of Corrections & Rehabilitation, Case No. SA-CE-1640-S* (unpublished.)

91.     On February 23, 2011, plaintiff filed a timely appeal with the California Third District Court of Appeal and that Court issued its final Writ Order on September 20, 2012, affirming the PERB's decision.

92.     On August 30, 2012, plaintiff filed a timely motion with the California Third District Court of Appeal to take Judicial Notice under Local Rule, 8.252, of PERB's wrong-doings and to make a factual finding for the Court. On September 30, 2012, the Court issued a Court Order taking judicial notice of the Plaintiff's motion, but, denied her request to make any factual findings for the Court against PERB.

93.     On September 28, 2012, the plaintiff filed a Petition with the Supreme Court of California, asking that Court to re-examine the Third District Court of Appeal's decision and to issue a decision on the merits of the case to settle the important question of law.  It also requested relief to provide uniformity of a PERB's administrative decision with statewide laws, regulations, statutes, government codes, and to determine the violations of the plaintiff's union contract agreement and provisions, including statutory, state and federal regulations with respect to due process and her constitutional rights afforded to her by law.

94.     On November 14, 2012, the Supreme Court of California, *En Banc*, issued their opinion that the petition for review was denied. *Patricia L. Woods v.  Public Employment Relations Board* (PERB), Case No. S-205697 (unpublished).

95.     On February 19, 2013, the plaintiff filed a Petition for a Writ of Certiorari with the U.S. Supreme Court to review and hear her case on Rules 10(b) and (c), and for further consideration to review a case from appeal from the State's highest court for a federal question of importance to the public of an issue at law.

96.     On January 23, 2013, the plaintiff filed an Application for an Extension of Time with the U.S. Supreme Court to retain legal counsel to represent her before the U.S. Supreme Court for a petition of Writ of Certiorari proceedings.  That request for extension of time was denied.  These actions thereby forced the plaintiff to remain before that Court for several months as a pro per litigant. (A true copy of the document is hereby attached as Exhibit 7.)

97.     On April 22, 2013, the U.S. Supreme Court issued their opinion that the petition for Writ of Certiorari was denied.

98.    On May 17, 2013, the plaintiff filed a Request for Reconsideration of her denied petition for Writ of Certiorari with the Court.  That request was also denied on June 17, 2013.

99.    The last date the plaintiff's legal matter was heard and decided by the U.S. Supreme Court was on June 17, 2013, placing her Sections 1981, 1985, 1986 civil rights claim as a timely filing before this Court.

100.    The U.S. Supreme Court has ruled that there is a four-year statute of limitations applying to the plaintiff's claims of racial discrimination and harassment portion of her case brought under the Civil Rights Act of 1866, statute of her 42 U.S.C. §1981 claims.  On May 3, 2004, in the decision of Jones *v. R.R. Donnelley & Sons Co.*  541 U.S. 369, the Court confirmed plaintiff's time-frame for filing of a Section 1981, 42 U.S.C. §1981 claim in a federal court and lengthens the limitation period for Section 1981 claims across the country to be extended to a four-year period for all such cases. (A true copy of the document is hereby attached as Exhibit 8.)

101.    Thus, the plaintiff has a timely filing of her claims and cause of actions in the federal court under 42 U.S.C. §1981, against CDCR and her 42 U.S.C. §1981, 1985 and 1986 against PERB.  Further, the Plaintiff is also suing both Defendants CDCR and PERB under the State of California, Tort Act for Breach of Contracts under her written (SEIU), labor union contract agreement and provisions, having a four-year statute of limitation based on the State of California state's laws and under her own state's laws for the State of Nevada. Thus, giving her standing before this Court to have this cause of action heard in a timely manner in conjunction with her federal claims under 42 U.S.C. § 1981, 1985 and 1986 under the Civil Rights Act along with the statutory violations under the Ralph C. Dills Act, (Gov. Code, sec. 3512 et seq.)

## **FIRST CAUSE OF ACTION: VIOLATIONS OF 42 U.S.C. § 1981**

102.    Plaintiff repeats and re-alleges each of the preceding paragraphs as if fully set forth herein.

103.    By the actions described above, among others, the Defendants and CDCR and PERB have intentionally discriminated against the Plaintiff based on her actual and/or perceived race, national origin, ethnicity, and/or descent, the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship, particularly in regard to employment and the aforesaid SEIU-CDCR collective bargaining Agreement, as are enjoyed by White citizens of the United States, in violation of 42 U.S.C. § 1981.

104.    In the alternative, by the actions described above, among others, the Defendants PERB have engaged in conduct that has had an unlawful discriminatory impact on the Plaintiffs and potential

1   other Plaintiffs to be named under a separate Class Action base  on their race, national origin,

2   ethnicity and/or  descent; including the use of unfair policies, practices and procedures at PERB.

3       105.    As a result of the Defendants CDCR and PERB's conduct, the Plaintiff has suffered and

4   continues to suffer injuries and damages.

5   ### SECOND CAUSE OF ACTION

6   ### VIOLATIONS OF 42 U.S.C. § 1985, (3) AND 1986

7   ### (CIVIL CONSPIRARCY TO INTERFERE WITH CIVIL RIGHTS)

8       106.    Plaintiff repeats and re-alleges each of the preceding paragraphs as if fully set forth herein.

9   The statutory provisions under 1985 provides for the following: 1985 (3) "that where two or more persons in

10  any State or Territory conspire for the purpose of depriving, either directly or indirectly any person or class

11  of persons of the equal privileges and immunities under the laws….if one or more persons engaged therein

12  do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in

13  his person or property, or deprived of having and exercising any right or privilege of a citizen of the United

14  States, the party so injured or deprived may have an action for recovery of damages occasioned by such

15  injury or deprivation against any one or more of the conspirators."

16

17      In addition, to an equitable action under 1986, the law provides for the plaintiff an action  against:

18  "every person who, having knowledge that any of wrongs conspired to be done, and mentioned in section

19  1985, of this title, are about to commit, and having power to prevent or aid in preventing the commission of

20  the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured"

21  … The named Defendants herein and each of them, formed a meeting of the minds and entered just such

22  conspiracies against Plaintiff; with an intent to deprive her of equal protection of the laws or of equal

23  privileges under the laws, on the insidious basis of Plaintiff's race, causing her injury. The conspiracy

24  between NORRIS, STORMS, and others to be named in the future, and the actions taken in furtherance of

25  said conspiracy, was to terminate Plaintiff's probationary employment without prior deliverance of the

26  legally mandated written performance evaluations and in contravention to her collective bargaining rights.

27  The conspiracy between ROSS and POTTER and others to be named , and the actions taken in furtherance

28  thereof, were: to permit and encourage all discriminatory acts against Plaintiff mentioned herein; to cause

- 20 -

PERB administrative decisions adverse to Plaintiff to be made, by means of Plaintiff's case being reviewed at PERB by a staff attorney who had previously as a staff attorney at DPA, represented NORRIS and STORMS in opposition to Plaintiff's claims; a conflict of interest  which was known to said Defendants (as well as to the ALJ), with ROSS making the decision to hire said attorney and POTTER approving all of said attorney's paperwork; which conflict went undisclosed; and further to allow to remain undisclosed the existence of the marriage between the administrative law judge who decided Plaintiff's case, and a certain attorney in private practice who both sits on PERB mediation panels and represents public labor unions that have collective bargaining agreements with CDCR, as mentioned in the following paragraph.

107.    Plaintiff only learned of some of PERB's concealed conspiracy actions which occurred within the timeframe of filing of her Preliminary Complaint with PERB, within less than one year for filing of a 1985 (3) and 1986 action against PERB through its administrator.  Specifically, it has heretofore been deliberately concealed from the public, and Plaintiff has learned within less than one year, that the PERB administrative law judge  (ALJ) who presided over and decided Plaintiff's case, was at all relevant times, married to a certain attorney with a private practice which includes representation of union clients whose contract matters are subject to adjudication before  the ALJ ; at the same time that the said attorney sits on PERB's mediation panels; thereby creating a conflict of interest between the said attorney  and the said ALJ, the union clients that the attorney represents, and  the ALJ's impartiality in Plaintiff's case, given that her husband's union clients are related to parties in contract with CDCR, the real party in interest to whom Plaintiff was opposed in her PERB proceedings. Had Plaintiff been aware of the said relationships at the time of the hearings, she would have moved to recuse the ALJ for conflict of interest and there is a reasonable probability that such motion would ultimately have been granted.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT, AGREEMENTS AND PROVISIONS OF THE
### SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU)

108.    Plaintiff repeats and re-alleges all previous paragraphs as if fully herein set forth.

1    109.    Plaintiff's union MOU under Article 4, State Rights, clearly states that the union will
2  recognize and enforce for the union member all state statutes, government codes and regulations in regard to
3  their employment with the State of California. The plaintiff takes this to mean that her union will recognize
   and enforce her statutory due process and union rights under the DPA Rule 599.795 and Government Code
4  19172 (Board of Regents v. Roth, 408 US 564 (1972))

5
6    110.    In the U.S., Supreme Court's landmark decision, *14 Penn Plaza*, in which the Plaintiff
   argued in her briefs before PERB and the State appellate and the U.S. Supreme Court, (but PERB failed to
7  apply this case law to this plaintiff's case), the Court held that when a state government union employee is
8  subjected to binding labor arbitration process and a collective bargaining agreement, then it requires that the
   adjudicatory body, in this case PERB, adhere to all the state's regulations, rules, and state laws governing the
9  employee's employment issues bargained for under the employee's union agreement.

10
11                          **F0URTH CAUSE OF ACTION**
12                **VIOLATIONS UNDER THE RALPH C. DILLS ACT**
13                      **(GOV. CODE, SEC. 3512 et seq.)**

14    111.    Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

15    112.    PERB's own Office of General Counsel issued its Complaint on January 22, 2008, against
   the CDRC in violation of Ralph C. Dills Act, Government Code Section 3519(a), Exhibit 5, attached.
16

17    113.    Whereby PERB has been given the legal authority and responsibility for the enforceability of
18  Plaintiff's union contract agreement through its administrative hearing proceedings related to the wrongful
   termination and/or retaliation against her under the Ralph C. Dills Act, (Gov. Code sec 3512 et seq.).
19  However, PERB failed to enforce this labor union contract agreement and has violated the Ralph C. Dills Act
20  along with other related state laws, state statutes, laws and government regulations; to Plaintiff's damage
21  according to proof; all of which was caused by insidious racial discrimination, for purposes of 42 U.S. Code
   1981.
22

23                **CONCLUSION, AND PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES**

24    114.    The Plaintiff has never received her day in Court or in any of the state's appellant courts in
25  the State of California, even at the U.S. Supreme Court, for a review of her PERB's administrative decision
   on its merits. Plaintiff truly believes that the California judicial system has failed her and that her only
26  remedy for settlement of this case and to avoid further costly litigation is through the federal court system.
27
28

115.    It has been a long road and taken well over nine years for the plaintiff to bring this case before the United States District Court, Eastern District.  She has exhausted all her legal administrative remedies through the State of California judicial system against CDCR and PERB by appealing to State of California, Third District Appeals Courts, California Supreme Court and the U.S. Supreme Court, respectively.

116.    For the reasons stated above, the plaintiff respectfully asks this federal court to review this present case on its merits for the violations of the plaintiff's federal civil rights by law and provide her with the specified relief as stated:

WHEREFORE, plaintiff hereby requests the following relief:

1.    A Court Order from this Court overturning of all the PERB's unfavorable, prejudicial, and discriminatory administrative decisions made against the Plaintiff by law, in that they were issued in and as a direct result of violations of her Constitutional rights as embodied in the statutes herein sued on.

2.    A Court Order reinstating the plaintiff to her employment with the State of California, for retirement purposes only, with all benefits appurtenant thereto, upon such terms as may be just.

3.    An injunction for relief requiring that the State of California and PERB amend and/or seek a statutory amendment from the California State Legislature to amend the statutory provisions and authority of PERB, both by its rules and regulations, abolishing the judicial requirement that a PERB's administrative appeal decisions must be appealed directly to the Third District Courts in California, prior to its first being heard in the state's Superior Court.

4.    An injunction for relief requiring that the State of California and PERB amend and/or seek a statutory amendment from the California State Legislature and/or a Governor's Executive's Order to amend the statutory provisions and authority of PERB such that the rules and regulations require that all its Administrative Law Judges (ALJ) and its attorney Board members, when acting in the capacity the same or similar as Administrative Law Judges, and when rendering PERB's administrative appeal decisions, be subject to the same ethical obligations as Superior Court Judges and the disciplinary jurisdiction under and by the California Judicial Council.

5.    An injunction for relief precluding PERB, and its Executive Staff, Board Members, Administrative Law Judges and other legal staff, from illegally engaging in or, supporting unprofessional and

unethical legal practices during PERB's administrative hearings and appeals process. This is to include but not be limited to: developing training programs and workshops designed to encourage, promote for and ensure that plaintiffs appearing before PERB for any and all administrative hearings are treated fairly and with respect; non-discriminatory practices and biases based on race; no conflicts of interest; and that all complaints filed with PERB against any legal staff, administrative law judges and/or others are taken seriously, thoroughly investigated, and will be prosecuted by PERB, the California Judicial Council and the State of California and the Bar of California to the full letter of the law.

6.      Plaintiff requests a Court Order requesting that the state require that all PERB's executive legal staff,  administrative law judges, and Board members must submit semi- annual Financial Statements of Interests and Disclosure, disclosing for the public records, if they have family members (by blood or marriage), working in any capability and/or contracting with PERB, that would in any way influence their administrative decisions, rulings, or impair their legal judgment to determine the outcome of a case decision or of any policy-making decision at PERB.

7.      An injunction for relief against PERB to further restrain these entities from forcing plaintiffs appearing before them for an unfair practice hearing case, and losing that case before the PERB's ALJ, from having to re-appear before that same ALJ for their union case.  Plaintiffs are entitled to have their second case against their unions for failure to defend for them at PERB's in their unfair practice hearing case before another ALJ.  Plaintiff believes that PERB has apparent conflicts-of-interest in the ability of hearing of both cases, and deposing of both of the cases, jointly and/or separately, in violation of the plaintiff(s) constitutional rights and due process under the law.

8.      An injunction for relief requiring that PERB will restrain from the exchange for hire and/or through any future Board's Interagency Agreements with the Department of Human Resources, (CalHR), (formerly Department of Personnel Administration (DPA), staff attorneys under a "inside legal trading policy".  This policy allows CalHR's attorneys through the PERB to work directly under one of PERB's Board member for a specified period and gain first-hand knowledge of PERB's Board's operations, legal decision-making, policies and strategies, rules and regulations. Thus, allowing these attorneys to return to their former employment at CalHR and immediately start to litigate PERB cases against union attorneys, plaintiff attorneys and parties as pro se litigants appearing before PERB, and in such cases, as was in the plaintiff's Woods's instant case, created a conflict-in-interest in her case.

9.      An injunction for relief precluding PERB, and its Executive Staff, Board Members, Administrative Law Judges and other legal staff, from engaging in or, supporting of conflict-of-interest conduct at PERB, including during any of its administrative hearings and the appeal process.  Further, to require PERB to put in place an updated disciplinary system for monitoring of conflict-of-interest problems

related to its legal staff, administrative law judges (ALJ), legal Board members, and other state attorneys' appearing before PERB, as well requiring of the disclosure for the PERB's hearing records any conflict-of-interest (perceived and/or apparent), for Administrative Law Judges, Board members and other executive and legal staff.

10.    An injunction for relief requiring that the State of California seek to amend by statutory provisions, by a Governor's Executive Order or from the California State Legislature, to establish within State Bar of California, a newly formed oversight division and a public 1-800 line with the exclusive functions to monitor any conflict-of interest complaints reported to and/or filed with the State Bar of California against any licensed and practicing attorneys working in a judicial and/or administrative hearing capacity in any governmental state agencies, Boards and/or all Commissions throughout the State of California.

11.    An injunction for relief requiring that the State of California make procedural hearing changes to the California Rules of Court, Rule 8. 252, "Motion Requesting the Court to Take Judicial Notice" requiring that each Justice or panel conduct an evidentiary hearing, including a full briefing schedule for the legal record, on any Request for Judicial Notice.

12.    An injunction for relief prohibiting the California Courts of Appeal and Supreme Court, from dismissing a party's appeal case by merely "issuing of a writ of denial", without first ruling on the court's record and issuance of a court decision as to the fact- findings of evidence hearings involving Rule, 8.252 issues, including by certified copy and notice to the California Judicial Council's Office, of the court's evidentiary findings in the matter of such a Judicial Notice case.

13.    Compensatory damages; and punitive damages to the extent permitted by law, in an amount to be determined at trial; including but not limited to all lost wages to date, any in-grade pays raise, merit increases, monetary and otherwise, restoration of all annual and sick leave credits, pay for loss of time, benefits and promotional opportunities, from date of termination of employment and diminished educational and career opportunities and attainment of those opportunities.

14.    For purposes of past and further litigation and/or settlement: legal costs, expenses and fees for her attorneys for having to litigate and/or settle this case before all previous tribunals and this Court, pursuant to 42 U.S.C. §§ 1981, 1985 and 1986 and any other applicable authority.

15.    Plaintiff further seeks damages for emotional distress, pain and suffering, loss of professional reputation, public and personal dignity, public and private humiliation, for the posting of "the

bogus PERB" case decisions and other courts related decisions worldwide of the Internet, included all search engines, financial loss of savings, loss of projected earnings, future losses, inconvenience, mental anguish and loss of enjoyment of life, and all other costs and income due her for litigating of PERB's discriminatory case decisions for six years. In addition, to the three-year current to date, totally well over (9) years involvement of this CDCR/ PERB's case.

16.    An order requiring total expungement of all adverse employment action records and pay codes from her state personnel files and/or records, both departmentally, at CDCR, CALPERS, the State Personnel Board, Department of Human Resources, formerly known as Department of Personnel Administration Services (DPA), the State Controller's Office, and/or any other agencies that maybe impacted by the legal settlement.

17.    For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues of facts and/or disputed issues of facts and damages stated herein.

Dated: June 5, 2017

Respectfully Submitted

Patricia L. Woods

Plaintiff in Pro Per

## **VERIFICATION AND DECLARATION**

I, PATRICIA L. WOODS, hereby declare under penalty of law, under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief and is within my personal knowledge, except for any matter stated on information and belief, which I believe to be true, and I could testify the same if called as a witness. This Declaration was executed on June 5, 2017, in the State of Nevada and in Las Vegas, Nevada.

Dated: June 5, 2017

Patricia L. Woods

Plaintiff in Pro Per

# Exhibit 1

Case 2:17-cv-00903-REA-ACT Document 90-4 Filed 06/12/17  Page 29 of 67

**PUBLIC EMPLOYMENT RELATIONS BOARD**



Office of the General Counsel
1031 18th Street
Sacramento, CA 95811-4124
Telephone: (916) 327-8381
Fax: (916) 327-6377



January 9, 2014

Patricia L. Woods
P.O. Box 660171
Sacramento, CA 95866-0171

Re:   *Patricia L. Woods v. State of California (Department of Corrections & Rehabilitation)*
      Unfair Practice Charge No. SA-CE-1640-S, PERB Decision No. 2136-S

Dear Ms. Woods:

On December 23, 2013, I received your letter of December 18, 2013, which requests an offer
of settlement from the Public Employment Relations Board (PERB or Board), to avoid a class
action in federal district court pursuant to 42 USC § 1981, and additional proceedings against
unspecified defendants before "judicial review boards." Seventeen exhibits from the above-
referenced PERB cases, as well as related cases you filed in the California Court of Appeal, the
California Supreme Court, and the United States Supreme Court, accompanied your December
18, 2013 letter, without explanation.

It is customary for a plaintiff contemplating litigation against any type of defendant to provide
a copy of a draft complaint, or a "demand letter" outlining the causes of action and remedies
she or he may seek through litigation. Because you have not provided us with any such
information, we cannot effectively evaluate your claims or potential for success on any of
them. Until you provide us with this information, we will be unable to consider your request
for pre-filing settlement discussions.

Please feel free to contact me if you have any questions concerning this matter.

Sincerely,

M. Suzanne Murphy
General Counsel

# PROOF OF SERVICE

I declare that I am a resident of or employed in the County of Sacramento, California. I am over the age of 18 years and not a party to the within entitled cause. The name and address of my residence or business is Public Employment Relations Board, 1031 18th Street, Sacramento, CA 95811-4124.

On January 9, 2014, I served the Letter regarding Case No. SA-CE-1640-S on the parties listed below by

 _X_  placing a true copy thereof enclosed in a sealed envelope for collection and delivery by the United States Postal Service or private delivery service following ordinary business practices with postage or other costs prepaid.

___ personal delivery.

___ facsimile transmission in accordance with the requirements of PERB Regulations 32090 and 32135(d).

Patricia L. Woods
P.O. Box 660171
Sacramento, CA  95866-0171

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 9, 2014, at Sacramento, California.

| | |
|---|---|
| W. Ross | _W. Ross_ |
| (Type or print name) | (Signature) |



Public Employment Relations Board
1031 18th Street
Sacramento, CA 95811

Patricia L. Woods
P.O. Box 660171
Sacramento, CA 95866-0171

9586601?1?1



UNITE
02 1A
0004600760   JAN 09 2014
MAILED FROM ZIPCODE 95811
$ 00.46⁰
PITNEY BOWES

# Exhibit 2

**DGS** GENERAL SERVICES                    Governor Edmund G. Brown Jr.

11/30/2016

Patricia L. Woods
PO Box 660171
Sacramento, CA 95866

RE:  Claim 16007527 for Patricia L. Woods

Dear Patricia Woods,

The Government Claims Program (GCP) received the claim you presented on 10/24/2016.

The GCP has no jurisdiction to consider the claim for the following reason(s).

The claim was presented more than one year beyond the date the damages accrued.  Please see Government Code section 911.2.

The GCP will take no further action on your claim.

If you have questions about this matter, please feel free to contact GCP by phone, mail, or email using the contact information below.   Please remember to reference the assigned claim number (16007527) in your communication.

Sincerely,

Government Claims Program
gcinfo@dgs.ca.gov

# Exhibit 3

01139
COPY



**LOCAL 1000**

**SEIU**

**Stronger Together**

October 12, 2007

Larry Norris, Staff Services Manager III
Department of Corrections and Rehabilitation
Division of Adult Parole Operations, Crisis Placement Unit
1515 "S" Street, Room 212 North
Sacramento, California 95814

**Re: Employment Status of Patricia L. Woods, Associate Governmental Program Analyst**

Dear Mr. Norris:

SEIU Local 1000 represents Patricia L. Woods in her capacity with your department as an Associate Governmental Program Analyst (Lead). Ms. Woods' employment commenced with the California Department of Corrections and Rehabilitation (CDCR) on September 10, 2007, when she transferred from her former position with the Department of Mental Health (DMH) as a Behavior Specialist II at Coalinga State Hospital (CHS).

When she was hired, Ms. Woods was led to believe – based on several written and oral communications she had had with your Staff Services Manager II, Robert Storms – that she would be placed in an Associate Governmental Program Analyst position to assume a specific set of duties and tasks as detailed in the attached Duty Statement. She came into the unit prepared to carry out those duties to her full capacity.

Those duties specifically stated she would be primarily performing work related to providing contract support services, monitoring existing contracts, and conducting contractor site visits. She was explicitly advised by Mr. Storms, both prior to and after being hired, that her work assignment would not significantly involve preparation and/or processing of invoices for contractors.

Ms. Woods' Duty Statement speaks only to a very limited function relating to invoices in that she might be asked to "assist and/or train other staff" in preparing and processing invoices. During their discussions involving her work assignment, Ms. Woods specifically clarified with Mr. Storms that this provision in her Duty Statement, in essence, meant that she would only be required to answer questions given to her by Staff Services Analysts (SSA's) and/or contractors regarding their final invoice payments or about invoices that had been previously processed by staff. In no way was Ms. Woods told she was being recruited and hired to perform the functions of preparing and processing invoices and other statements from the contractors. In fact, if those were the functions she would have been expected to perform, she would not have accepted the employment offer in the first place.

Furthermore, the Duty Statement submitted to CDCR's Personnel Department further clarified that Ms. Woods' duties and tasks did not involve with the preparation and

JIM HARD
President

CATHY HACKETT
Vice President
and Secretary-Treasurer

MARC BAUTISTA
Vice President
for Organizing/Representation

YVONNE WALKER
Vice President for Bargaining

SERVICE EMPLOYEES
INTERNATIONAL UNION

1808 14th Street
Sacramento, CA 95814
(916) 554-1200
(916) 488-SEIU (7248)
(916) 554-1275 (fax)
www.seiu1000.org



**LOCAL 1000**

**SEIU**

**Stronger Together**

processing of invoices and statements. That Duty Statement was signed by both Mr. Storms and Ms. Woods on September 4, 2007 – six days prior to Ms. Woods commencing employment in your division.

Ms. Woods accepted her employment with the understanding that her position would primarily be a field position requiring her to meet on a regular basis with contractors to perform on-site monitoring and visits statewide. Because she was hired to do extensive fieldwork, she was issued a laptop computer by your IT personnel on her first day at work. She was told by IT staff that Mr. Storms had requested that a laptop computer be issued to her because her assignment would be primarily fieldwork.

Moreover, Mr. Storms prepared for Ms. Woods a workload chart within the first week of her employment that showed the invoices and billing functions would be exclusively assigned to the two SSA's in the unit. A view of the attached Duty Statements for the two SSA's supports Ms. Woods' understanding of her duties.

On October 8, 2007, Ms. Woods' duties and functions were increased with virtually no prior notice. Those additional duties included the preparing and processing of contractors invoices – a direct contravention of her original Duty Statement and agreement with Mr. Storms. These duties are outside the scope of her duty statement, work classification, and job specifications. Ms. Woods' duties have been unfairly increased beyond the normal 100% work hours already defined in her duty statement. As a result, Ms. Woods is being subjected to an inappropriate and unreasonable increase in her workload and job assignments. These added functions of requiring her to prepare and process invoices will preclude her from carrying out the duties for which she was originally was hired.

These added duties are in noncompliance with her job classification, placing her out of class with no extra compensation. Our union cannot condone this without a letter of justification from CDCR stating the reasons for the out-of-class work.

Additionally, we have other related personnel management concerns regarding the unfair manner in which Ms. Woods feels she has been treated. These concerns, along with the aforementioned factors, contributed to Ms. Woods feeling forced to submit her untimely resignation from her position as Associate Governmental Program Analyst with your division.

Ms. Woods has assured me she is willing to discuss openly with you these sensitive concerns. She is very anxious to resolve this situation as amicably, fairly, and quickly as possible. She does not wish to cause any undue dissension and strife within your unit.

We are asking that you please meet with Ms. Woods to resolve her concerns. Furthermore, we have asked Ms. Woods to please reconsider her resignation in order to allow you to work with her to relocate her to another comparable position somewhere else in your unit, division, or with the department.

In the interim, we are also asking that you please consider relocating Ms. Woods immediately from under her current supervisor, allowing her to avoid being subjected to what appears to us as a hostile working environment. Ms. Woods is somewhat distraught by the current state of affairs and we believe her health is being affected.

For the record, Ms. Woods has an unblemished, ten-year civil service history with the State of California. She no disciplinary actions in her personnel files, and there are none

JIM HARD
*President*

CATHY HACKETT
*Vice President
and Secretary-Treasurer*

MARC BAUTISTA
*Vice President
for Organizing/Representation*

YVONNE WALKER
*Vice President for Bargaining*

SERVICE EMPLOYEES
INTERNATIONAL UNION

1808 14th Street
Sacramento, CA 95814
(916) 554-1200
(916) 488-SEIU (7248)
(916) 554-1275 (fax)
www.seiu1000.org



**LOCAL 1000**

**SEIU**

**Stronger Together**

pending. We think it is a shame that she has been subjected to a situation that has forced her to consider the extreme measure of resigning her position with the State of California and the Department of Corrections and Rehabilitation. We believe she has been dealt with unfairly and in bad faith, and was possibly hired under false pretenses. Ms. Woods should be allowed to continue her career with the Department of Corrections in another unit under new supervision with comparable work assignments as described in her original duty statement.

We at SEIU Local 1000 are formally asking that you please resolve this matter expeditiously and fairly with no adverse consequences for Ms. Woods. I may be reached at (916) 554-1333, should you or your staff need me.

Thank you for your consideration and immediate attention to this matter.

Sincerely,

Lois Kugelmass
Senior Union Representative

**Attachments**

cc:     Jill Dubbs, Staff Services Manager II
        Robert Storms, Staff Services Manager II
        Steve Francis, Department of Corrections, Labor Relations Office

JIM HARD
President

CATHY HACKETT
Vice President
and Secretary-Treasurer

MARC BAUTISTA
Vice President
for Organizing/Representation

YVONNE WALKER
Vice President for Bargaining

SERVICE EMPLOYEES
INTERNATIONAL UNION

1808 14th Street
Sacramento, CA 95814
(916) 554-1200
(8) 488-SEIU (7248)
(916) 554-1275 (fax)
www.seiu1000.org

# Exhibit 4

02264

December 5, 2007



Carolina Garcia, Skelly Officer
Department of Corrections and Rehabilitation
Juvenile Parole Operations
4241 Williamsbourgh Drive, Suite 219
Sacramento, CA 95823

**RE:  Skelly Hearing, December 5, 2007: 3:30PM – Patricia Woods, AGPA, Division of Adults Parole Operations, (DAPO), California Department of Corrections and Rehabilitation (CDCR)**

Dear Carolina Garcia:

SEIU Local 1000 is appearing on behalf our union member, Patricia Woods, in the above-mentioned matter. As the Skelly Hearing Officer in this matter, you are being asked to review Ms. Woods' appeal of her Notice of Rejection During Probationary Period from the Division of Adults Parole Operations (DAPO) of the California Department of Corrections and Rehabilitation (CDCR). As we understand it, you will make a recommendation based on your findings from today's hearing to the Director of the division, Thomas Hoffman.

We respectfully request that you immediately dismiss this Notice of Rejection During Probationary Period on the *prima facie* grounds that the required due process of State Personnel Board and CDCR personnel policies and procedures was not followed and that Ms. Woods' employment rights have been grossly violated because of CDCR's failure to perform due diligence in preparing for the Notice of Rejection. We further ask that Ms. Woods be reinstated immediately to her previous position and that all records regarding this Notice of Rejection be expunged from her personnel file.

We have prepared this document (and all its attachments) setting forth the union's concerns and Ms. Woods' responses to the hearsay allegations detailed in Robert Storms "Supervisory Notes" and in the Notice of Rejection During Probationary Period. We will refute all of Storms' charges and innuendos in these documents – and we will set the record straight on Ms. Woods' legitimate concerns regarding:

- The misrepresentations made to her during the course of her employment,

- The inappropriate (and illegal) demands for her Social Security Number,

- The hostile work environment to which she was subjected, and

- The humiliating public retaliation she suffered for seeking the advice and counsel of her union representatives.

We will further prove that she was dealt with in bad faith and that she suffered irreparable damage to her reputation as the result of her summary dismissal.

02265

Skelly Hearing – Patricia Woods   December 3, 2007



For the record:

1.  SEIU Local 1000 wrote an urgent letter on October 12, 2007, asking DAPO to please
    call us to arrange for a brief meeting with us and Ms. Woods.

    We wanted to mediate what was then a small problem that could have been quickly and
    quietly resolved to all parties' satisfaction. We had planned to address DAPO's issues as
    well as Ms. Woods' concerns.

    For the life of us, we cannot conceive of any legitimate reason why DAPO did not accept
    our offer to meet and confer. Moreover, we don't understand why we didn't even receive
    a *response* to our formal letter within the normal 30-day period; in fact, we have yet to
    receive a formal response to our letter. This entire unfortunate state of current circum-
    stances could have – *and should have* – been avoided. We can only surmise this lack of
    response to a formal request – and Ms. Woods' subsequent rejection on probation – to
    be evidence of DAPO dealing with her and SEIU in bad faith.

2.  We at SEIU are also concerned regarding the highly visible and inappropriate manner in
    which Ms. Wood was escorted out of the building November 27, 2007. We only learned
    of this egregious action when Ms. Woods contacted us on November 28, 2007 – the day
    *after* DAPO had placed her on administrative leave. Curiously, our first communication
    from DAPO wasn't until November 28, 2007, when we received a voicemail message
    from Larry Norris in which he stated that his schedule had been so busy [October 12 to
    November 27, 2007] that neither he nor his staff were able to meet with the union
    regarding a meeting with SEIU and Ms. Woods. However, he said we would be receiving
    a letter from DAPO "soon" regarding the concerns raised in our October 12, 2007, letter.
    Further, Norris neglected to mention in his voice message that Storms had already
    improperly imposed a Notice of Rejection During Probationary Period upon Ms. Woods
    the day before.

3.  Given the above, documented facts, we at SEIU can only conclude that DAPO was
    avoiding a meeting with us to allow Storms the opportunity to reject Ms. Woods during
    the probationary period. On appeals, the State Personnel Board has ruled repeatedly
    against state agencies, and for the state employees, that no state agency and/or its
    managers may use rejection during the probationary period as a weapon of retaliation
    against an employee for seeking advice from their duly designated union. Robert Storms
    failed to follow his own department's personnel policies and procedures for rejection a
    new employee on probation. This failure to follow procedure included a complete
    absence of any documentation given to Ms. Woods, including her first quarterly
    evaluation (due November 9, 2007) and/or at least one formal warning letter advising her
    that she was in trouble with her performance as an Associate Governmental Program
    Analyst. Furthermore, she was not given reasonable time and assistance by Robert
    Storms to improve her work performance.

4.  There is further evidence of bad faith when Ms. Woods was advised to *withdraw* her
    letter of resignation dated, October 4, 2007. At that time, she was promised:

    •  Her concerns were being taken under consideration;

    •  She would be treated fairly and the concerns raised in our union's letter of
       October 12, 2007, would handled in a quiet and discretionary manner;

- No retaliatory or adverse actions would be taken against her;

- DAPO intended to adhere to all CDCR and SPB rules, regulations, and policies governing the protection of a state employee in a hostile work environment;

- She would not be openly or publicly embarrassed by any of the staff or supervisors;

- She would be given meaningful and productive work within her classification tied to specific due dates and with regular constructive feedback;

- She would receive written documentation from Storms regarding the quality of her work assignments, showing her any areas of deficiency, areas in which she needed improvement, and areas where she excelled;

- She would be given written notices by e-mail or letters in a timely fashion whenever there were any problems involving her in the unit with Storms or any other staff members;

- A decision on whether a transfer to another unit would be feasible;

- A determination would be made if or when they would meet with the union for a peaceful resolution;

- She would be a given a fair and timely performance evaluation (the first of the required three, which was due no later than November 9, 2007); *and*

- She would be the first to know when a decision was made regarding her employment status and the reasons for the decision.

None of these promises was kept. To the contrary, Ms. Woods was suddenly and peremptorily served with her Notice of Rejection During Probationary Period and herded out her office on November 27, 2007. She was given virtually no notice of this action, and she was given very little time to pack her personal belongings in two boxes. This entire personnel action was done in a manner that publicly humiliated and shamed her in front of her colleagues. We believe this type of disciplinary action against Ms. Woods was used to serve as a warning to other DAPO employees that if they chose to go their union for help or if they refused to provide their Social Security numbers on their timesheets, then Robert Storms would retaliate. This is not a good message to send to any state employee, in any state agency, under any circumstances. This type of personnel action against any union member represented by SEIU Local Union 1000 is absolutely unacceptable, and we stand firm with Ms. Woods in this matter.

Again, for the record:

1. Giving a state employee a Notice of Rejection During Probationary Period, in essence, means that the employee's department or division must have taken all possible steps and measures to assist the employee in reaching specific employment goals to become a viable and permanent employee with the State of California.

2. Ms. Woods did not receive – prior to her Notice of Rejection – copies of any letters, memos, e-mail messages, or at least one "letter of warning," and/or any other documents from Robert Storms proving that he did any of the following:

- Provided her with job-related assistance;



- Gave her a listing of time and due dates of all her work assignments;

- Met and conferred with her on those assignments

- Established a remedial work plan (if one was needed) showing areas in which she had work deficiencies and the time frame which he would give her to remediate those deficiencies;

- Offered any positive or negative feedback on a regular basis, in writing, by e-mail messages, memos, or letters;

- Provided any on-the-job training that was needed for her to complete her specific duties as described in her Duty Statement;

- Addressed the concerns that were raised in the SEIU letter of October 12, 2007; or

- Finally, that he adhered to CDCR and SPB rules and regulations governing him as a manager, including issuing her mandatory first quarterly performance report, which was due no later than November 9, 2007. He failed and refused to issue this report despite Ms. Woods' repeatedly asking for one.

An Employee's Quarterly Performance Report, is one of the most critical documents to be reviewed and signed all parties (Robert Storms and Ms. Woods). It gauges whether or not the employee is meeting her required duties as an AGPA in the unit.

Merely making unsubstantiated, after-the-fact allegations in his "Supervisory Notes" that Ms. Woods did not complete her work assignments, was resistant to training, and was unapproachable is only hearsay "evidence" and does not give Robert Storms the right to reject Ms. Woods during the probationary period.

The probationary period for any new employee is a joint venture between the supervisor and the new employee. The employee does not shoulder the total responsibility for the probationary period being successful. There must be "clear and convincing evidence" that the manager or supervisor did everything reasonably possible to assist the employee with understanding her work assignments, documenting the process for completion, and issuing memos, e-mail messages, and "letters of warning" (not supervisor's notes, after the rejection action) telling the employee that she was in serious trouble.

Robert Storms should not be allowed to circumvent any of the State Personnel Board's rules, regulations, and polices – or the protocols of CDCR – governing the employment and selection process for the probationary period. And he certainly should not be permitted to impose a rejection during probation without due process and just cause.

Termination of a probationary employee requires strict compliance with statutory requirements. The State Personnel Board and the courts have repeatedly confirmed that a civil service probationer is entitled to have the statutory procedure for dismissal strictly followed (*Nilsson v. State Personnel Board (1938); 25 Cal. App.2d 699, 705; Brown v, State Personnel Board (1941) 43 Cal. App. 2d 70, 75; Wiles v State Personnel Board (1942) 19 C. 2d 344, 351; Santillano v. State Personnel Board (1981) 117 Cal. App. 3d 620, 635*).

When a State of California department fails to comply with these requirements, the rejection fails to go into effect, and the employee obtains permanent civil service status.

Furthermore, the provisions of Penal Code Section 6129, subsection (c) (3), state any employee of CDCR found to have engaged in retaliatory acts shall be disciplined by, at a minimum, a suspension without pay for 30 calendar days.

We will now discuss the Exhibits attached to this letter. The Exhibits show that Ms. Woods did everything possible to resolve this situation amicably, and that she made several futile attempts after our union letter was issued on October 12, 2007, to bring this matter to full closure. During the period of dispute, Ms. Woods continued to request of Robert Storms and of others to reassign her to another work unit. Her requests were consistently ignored or denied. She was told that it would set a bad precedent for DAPO because her position was assigned to Storms' unit.

Additionally, Ms. Woods was told repeatedly that her matter was under review, and she would be the first person to be notified when a decision was made. She was further assured not to worry because things were being handled properly.

When it became obvious to her that things were not being handled properly, she again asked to be removed from her work unit and to have a meeting with her union representative. At that time, she was told that a meeting with the union would be "premature." Furthermore, she was told DAPO was "under no obligation" to meet with her union representative and/or to accept any of the union's recommendations. As a result, the SEIU union representative was never called by staff until the day *after* Ms. Woods had been rejected during probation (November 28, 2007).

In an effort to reduce further conflict, Ms. Woods took it upon herself to seek new employment (inside and outside of CDCR). She further took departmental promotional examinations, where she scored and was placed so highly on those examination eligibility lists that she felt it was just a matter of time before she would land new employment.

Ms. Woods has an unblemished, ten-year record of state civil service of which she is justifiably proud. There are no adverse performance evaluations (to date) and no rejections on probation actions in her personnel file.

In support of her past exemplary work history, we have attached copies of letters of recommendation and praise for her outstanding work performance from her previous supervisors and co-workers at Coalinga State Hospital (CSH). Moreover, personal evaluation forms from the patients she worked with and trained at Coalinga State Hospital similarly attest to her high-level of performance and professionalism.

Also, we are submitting several e-mail messages and one letter of gratitude and acknowledgement from one of DAPO's own contractors, noting the invaluable work Ms. Woods did for them in terms of getting them operational with their contract. There are other e-mail messages where DAPO contractors are inviting her to come visit with them at their contractor offices, conferences, and to review their projects. Even one of the other supervisors working with Robert Storms, Goldie Parino, openly stated in her e-mail message to Ms. Woods (11/18/07), "... I look forward to your return on Monday so that you can continue the efforts made so far on getting the [LA] contractor operational." This proves Ms. Woods was able to develop a positive rapport with DAPO's contractors as an AGPA in less than three months.

with Robert Storms, Goldie Parino, openly stated in her e-mail message to Ms. Woods. (11/18/07), "... I look forward to your return on Monday so that you can continue the efforts made so far on getting the [LA] contractor operational." This proves Ms. Woods was able to develop a positive rapport with DAPO's contractors as an AGPA in less than three months.

These letters and e-mail messages all demonstrate – contrary to Storms' allegations – that Ms. Woods' has the qualities and abilities to work with all types of people from all types of backgrounds. In addition, the letters also confirm that she possesses the professionalism, honesty, and integrity to take responsibility for her actions and to appreciate the diversity and differences in people and treat her co-workers with dignity and respect.

Our union member Ms. Woods did everything humanly possible to remove herself from harm's way and to avoid being publicly embarrassed and humiliated by her supervisor Robert Storms in the workplace. She notified Mr. Storms early on that there were problems. When he did not respond satisfactorily, she prematurely submitted a letter of resignation and then she sought technical assistance through her union, SEIU Local 1000. Then her matter escalated to two other supervisors for review. She was then told to consider placing her resignation letter on hold, which she did. She was then led to believe that her concerns would be taken under consideration and that she would be treated fairly – only to be blindsided with the Notice of Rejection During Probationary Period, which amounts to retaliation against our union member.

So we say to you, Ms. Garcia, as the Skelly Hearing Officer today, the only two real questions before you are: (1) What should a state employee do when they find themselves in a hostile work environment and they have exhausted all remedies they believe to be available to them? (2) And further, What can you do to assure SEIU that Ms. Woods – nor any of our other members – will not be subjected to this type of retaliation in the future?

In conclusion, we at SEUI ask you to disallow Robert Storms' Notice of Rejection During Probationary Period against Ms. Woods.

Thank you.

Sincerely,

Lois Kugelmass
Senior Union Representative

Attachments

# Exhibit 5

STATE OF CALIFORNIA

PUBLIC EMPLOYMENT RELATIONS BOARD



PATRICIA L. WOODS,

              Charging Party,

    v.

STATE OF CALIFORNIA (DEPARTMENT OF
CORRECTIONS & REHABILITATION),

              Respondent.

Case No.  SA-CE-1640-S

COMPLAINT

It having been charged by Charging Party that Respondent engaged in unfair practices

in violation of California Government Code section 3519, the General Counsel of the Public

Employment Relations Board (PERB) on behalf of PERB, pursuant to California Government

Code sections 3513(h), 3514.5 and 3541.3(i) and California Code of Regulations, title 8,

section 32640, issues this COMPLAINT and alleges:

    1.    Respondent is the state employer within the meaning of Government Code section

3513(j).

    2.    Patricia Woods (Ms. Woods or Charging Party) is a state employee within the

meaning of Government Code section 3513(c) and is in a bargaining unit represented by

Service Employees International Union Local 1000 (SEIU).

    3.    On or about October 8, 2007, Ms. Woods was required to perform work duties

outside the scope of her classification as an Associate Governmental Program Analyst at the

California Department of Corrections and Rehabilitation (CDCR), Division of Adult Parole

Operations.

    4.    Charging Party exercised rights guaranteed by the Ralph C. Dills Act when:  (1) she

expressed concerns, via a letter from SEIU (dated October 12, 2007), to Respondent's agent

Staff Services Manager III Larry Norris, regarding *inter alia*, her performing out-of-class work; (2) she met with Mr. Norris on October 22, 2007 to discuss, *inter alia*, employment concerns described in paragraph 3; (3) she requested, via letter to Mr. Norris (dated October 29, 2007), that she be "transferred from under the supervision of [Robert Storms, CDCR Staff Services Manager II] and the hostile work environment he fostered"; (4) she met with Mr. Norris on November 9, 2007 and asked him when he would respond to SEIU's October 12, 2007 letter; and (5) she met with Mr. Norris on November 16, 2007 and requested that he meet with SEIU to discuss her employment concerns described in paragraph 3.

5.     On or about November 27, 2007, Respondent, acting through its agents Mr. Storms and/or Mr. Norris, took adverse action against Charging Party by issuing her a "Notice of Rejection During Probationary Period."

6.     Respondent took the actions described in paragraph 5 because of the employee's activities described in paragraph 4, and thus violated Government Code section 3519(a).

Any amendment to the complaint shall be processed pursuant to California Code of Regulations, title 8, sections 32647 and 32648.

DATED: January 22, 2008

TAMI R. BOGERT
General Counsel

By  _____
Yaron Partovi
Regional Attorney

2

RECE·/ED
PERSONNEL ADMINISTRATION
LEGAL DIVISION

# PROOF OF SERVICE

2008 JAN 24  PM 2: 31

    I declare that I am a resident of or employed in the County of Sacramento, California.  I am over the age of 18 years and not a party to the within entitled cause. The name and address of my residence or business is Public Employment Relations Board, 1031 18th Street, Sacramento, CA 95811-4124.

    On January 23, 2008, I served the Letter regarding Case No. SA-CE-1640-S on the parties listed below by

    <u>X</u>  placing a true copy thereof enclosed in a sealed envelope for collection and delivery by the United States Postal Service or private delivery service following ordinary business practices with postage or other costs prepaid.
    ___ personal delivery.
    ___ facsimile transmission in accordance with the requirements of PERB Regulations 32090 and 32135(d).

Patricia L. Woods
P.O., Box 660171
Sacramento, CA  95866-0171

Casey L. Chapanian, Legal Counsel
Department of Personnel Administration
1515 S Street, North Building, Suite 400
Sacramento, CA  95811-7258

    I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 23, 2008, at Sacramento, California.

_____
Anna Quintero
(Type or print name)

_____
(Signature)

Public Employment Relations Board
1031 18th Street
Sacramento, CA 95814-4174



Patricia L. Woods
P.O., Box 660171
Sacramento, CA 95866-0171

Exhibit 6



# Skelly Hearing – Patricia L. Woods

## December 5, 2007

State of California

Department of Corrections and Rehabilitation
Division of Juvenile Justice

# Memorandum

Date: December 06, 2007

To: Thomas G. Hoffman, Director
Division of Adult Parole Operations

From: CAROLINA LUEVANOS-GARCIA, DIRECTOR (A)
Division of Juvenile Parole Operations



P.E.R.B.

CP

EXHIBIT NO. _____ I

I.D. _____   REC'D _____ V

Subject: **Skelly Hearing Officer Recommendation**
**Patricia L. Woods**
**Rejection During Probation**

On December 5, 2007, I conducted a Skelly Hearing for Associate Governmental Program Analyst (AGPA) Patricia L. Woods at 3:30 p.m. at the Division of Juvenile Parole Operations headquarters located at 4241 Williamsbourgh Drive, Sacramento, California. Ms. Woods was represented by Lois Kugelmass, from the Service Employee International Union. Also in attendance was Ms. Deanna Kaihara, AGPA who served as note taker. Ms. Woods is being rejected during probation with an effective date of the action listed on the Notice of Rejection During Probation as "start of business December 5, 2007."

The employee and the employee's representative presented information to the *Skelly* Officer both in writing and orally. I have attached the bound document submitted by the employee and a 6-page summary document presented by her representative. The employee was advised at the Skelly Hearing that my recommendation would be conveyed to you as soon as possible and no later than two days from the date of the hearing.

The following are my findings:

1. The effective date of the action is listed on the Notice as prior to the completion of the Skelly Hearing, but after the minimum required 5-day window known as the Skelly period.

2. In review of the Materials and Documents in support of the action, I note that the typed chronological listing of Supervisory Notes submitted by Mr. Storms do not indicate any type of acknowledgement from the employee that she was aware a comment was being placed into her supervisory file.

3. In review of the facts, I noted that there were no supporting documents documenting any type of corrective actions or other forms of progressive discipline as are customary during supervision and especially necessary for probationary employees.

4. In addition, the Performance Report for Probationary Employees routinely scheduled for November 9, 2007 was not conducted, nor postponed in any documented fashion.

The following items should be addressed:

1. It may behoove the Department to amend the effective date to allow for the Skelly Meeting to have occurred while the employee was still on administrative leave. This

Skelly Recommendation
Patricia L. Woods, AGPA

would entail an extension of the ATO period as well.

2. Determine if by bargaining unit agreement or policy, it is required to discuss with or at minimum, advise an employee of potentially negative comments being kept in a supervisory file. This may be a practice determined by policy, contract or by training.

3. Determine if in fact there were documented meetings held or any type of corrective actions or progressive discipline taken to coach, train, instruct or otherwise correct Ms. Woods' deficiencies.

RECOMMENDATION:

After careful consideration of all of the information provided, pending clarification of the items cited above, I recommend that the Rejection During Probation be withdrawn.

Attachments

CG:cg

# Exhibit 7

January 23, 2013

Supreme Court of the United States          12 A 764
Office of the Clerk
1 First Street, N.E.
Washington, D.C. 20543

**RE: APPLICATION FOR AN EXTENSION OF TIME TO FILE A PETITION FOR A WRIT OF CERTIORARI FOR A PERIOD OF (60 DAYS), RULE 13.5, FOR REVIEW OF CALIFORNIA SUPREME COURT DECISION CASE NO: S 205697 AND CALIFORNIA THIRD DISTRICT COURT OF APPEAL DECISION CASE NO: C067447, WOODS VS. PUBLIC EMPLOYMENT RELATIONS BOARD (PERB), RESPONDENT AND THE DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), (REAL PARY OF INTEREST).**

To the Clerk of the U.S. Supreme Court:

Pursuance to the U.S. Supreme Court Rule, 13.5, a timely request can be made with this Court, within (10) days prior to the due date of when the petition is due, (February 12, 2013), for a party seeking to request an extension of time to file his or her Petition for Review of the Writ of Certiorari before this Court.

I, Patricia Woods, the named Petitioner, in the above-mentioned appeal action, will be the same Petitioner to be named in Petitioner For A Writ of Certiorari; whereby, I request this Court to grant me an (60 day), extension of time, to and include February 12, 2013, within to file a petition for a Writ of Certiorari before this Court. Also, the needed time is to seek and retain legal counsel for review of my appeal files and for preparation of the Petition for Review of the Writ of Certiorari before this Court.*

The Petitioner's case files consisted of 10 Vols. and well over (2,474) pages filed with the California Appeal Court, Third Appellant District, prior to filing of any of the appeal motions before that Court. Also, included for review is the California Supreme Court's case filing consisting of 1 Vol. (pages unspecified.)

The Petition has had an undue hardship of attempting to locate and retain an attorney during the holiday season and during the New Year periods, and the Petitioner has just been able to indentify attorneys willing to review her appeal case files for consideration of filing of a petition for review before this Court.

These attorneys are very familiar with the court's procedures and practice of filing of writs and have argued a substantial number of cases before the U.S. Supreme Court. As a result, the Petitioner has been asked to copy and mail portions of her appeal court files to these attorneys, and this process too is very time consuming.

---

*Adding (60 days) to the current deadline of February 12, 2013, would extend the filing deadline to Sunday, April 13, 2013. April 15, 2013, is the next day that is not a Saturday or Sunday, federal holiday, or day on which the Court building is close. See S. Ct. R. 30.1.

Patricia L. Woods
Page Two

The Petitioner believes that this Court has jurisdiction to review and to hear her case based on Rules 10 (b) and (c) and under other consideration to review a case from appeal from the state's highest court for a federal question of importance to the public of an issue at large.

As required under the Court's rules, I have filed and served a copy of this letter requesting an extension of time on all the parties of record that are due notice and to be served. Also, I'm attaching to this letter copy of the state's appeal courts final opinions (Exhibits 1 and Exhibit 2.)

No parties would be prejudiced by the Court granting of an (60 days) extension of time. With or without an extension, the Court would not consider the petition this term.

Accordingly, the Petitioner, respectfully requests that an order be entered extending the time for an attorney to file a petition for Writ of Certiorari by 60 days, to and including February 12, 2013.

Respectfully,

Patricia L. Woods
P.O. Box 660171
Sacramento, California 95866-0171
(916) 640-7751

**NAMES REDACTED FOR PRINTING PURPOSES**
(by email message)

From: jb@.org
To: Patricia Woods
Date: Thu, 30 May 2013 17:42:13 -0400
Subject: Before the U.S. Supreme Court-Patricia Woods

Yes. Ms. Woods.  I received your voice and email messages. You continue to
amaze me with your stamina and determination to fight for your rights at the
Supreme Court, the highest and most sophisticated tribunal in the land. And yet,
you are a non-lawyer. Your legal work in appearing pro se is better than some
licensed lawyers who represent their clients.  Tis better to have fought for your
day in court and lost, then never to have fought at all. Press on.

Attorney JB (Attorney before the Supreme Court)

## NAMES REDACTED FOR PRINTING PURPOSES
**(by email message)**

**From:** RPLLF@.com
**Sent:** Thursday, March 14, 2013 3:50 PM
**To:** Patricia Woods
**Subject:** Re: <u>WOODS BEFORE THE U.S. SUPREME COURT</u>


Dear Ms. Woods -- I have reviewed the information you provided regarding your petition for certiorari pending before the U.S. Supreme Court. I am sorry to report that PLLF is unable to assist you at this point. Our staffing situation is severely compromised with one lawyer on active duty for three weeks in the military, a second lawyer on emergency sick leave and also due to the press of our other litigation that is ongoing.

Having said that, I want to commend you for the quality of your work. It is outstanding and compelling. I encourage you, regardless of the outcome of this petition, to consider pursuing a career in advocacy -- legal or otherwise. Many of our great advocates got their start as the victims of injustice. You write that you believe in miracles, as do I. Perhaps you are being guided in a direction by the miracle-maker!!

I apologize for the long delay in responding to your request for help. We are a very small legal organization with a tremendous amount of pressing activity. I hope that the Supreme Court takes you case and that we can revisit assisting you later this year.

All the best to you,

PLLF LEGAL FOUNDATION
(ATTORNEYS BEFORE THE U.S. SUPREME COURT)

# Exhibit 8

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC 20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

June 17, 2013

Ms. Patricia Woods
P.O. Box 660171
Sacramento, CA 95866

      Re:  Patricia L. Woods
           v. Public Employment Relations Board
           No. 12-8766

Dear Ms. Woods:

    The Court today entered the following order in the above-entitled case:

    The petition for rehearing is denied.

                Sincerely,

                William K. Suter, Clerk



OFFICE OF THE CLERK
SUPREME COURT OF THE UNITED STATES
WASHINGTON, DC 20543-0001

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

# Supreme Court of the United States

No.   12-8766

Patricia L. Woods,

Petitioner

v.

Public Employment Relations Board

A PETITION FOR REHEARING having been filed in this case,

UPON CONSIDERATION THEREOF, it is ordered by this Court that the said petition is denied.

June 17, 2013

A true copy SCOTT S. HARRIS
        Test:
Clerk of the Supreme Court of the United States

By _____
                                 Deputy

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

July 16, 2013

Patricia Woods
P.O. Box 660171
Sacramento, CA 95866

    RE: Woods v. PERB
       Further Rehearing
       No: 12-8766

Dear Ms. Woods:

    The papers pertaining to the above-entitled case that were received July 15, 2013 are herewith returned.  Rehearing was denied June 17, 2013. This case is considered closed in this Court, and no further consideration by this Court is possible.

                                   Sincerely,
                                   William K. Suter, Clerk
                                 By:
                                 Erik Fossum
                                 (202) 479-3392

Enclosures

Supreme Court of the United States
Washington, D.C. 20543-0001

Patricia Woods
P.O. Box 660171
Sacramento, CA 95866

Priority Mail
ComBasPrice

MAILED FROM ZIP CODE 20543
000001 2042    JUL 17 2013
$ 09.88
02 1P
PITNEY BOWES

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

June 5, 2017                          **BY OVERNIGHT U.S. MAIL**

Clerk's Office
United States District Court
for the Eastern District of California
Sacramento Division
Room 4-200, 4th Floor
Robert T. Matsui United States Courthouse
501 "I" Street
Sacramento, CA 95814

> **RE:**   **Case No: 2:17-CV-00793 - GEB AC PS**
> **Patricia L. Woods vs, State of California,**
> **Department of Corrections & Rehabilitation;**
> **Public Employment Relations Board, et al**
> **(Amended Complaint and a Request for Revised Summons Documents)**

Dear Clerk:

This letter serves as my request that you please file the Amended Complaint and issue revised copies of
the Court's Summons document to show the following corrections.

1. Amended Complaint for purposes of the name correction only for "Eileen Potter" from Eileen
   Porter. The Amended Complaint reflects these charges throughout the document;

2. A request for revised copies of the Summons document that was issued to the Plaintiff on April
   14, 2017 to be served of the named Defendants along with the Amended Complaint.

Please find enclosed four copies of the Amended Complaint and I'm asking that two copies be returned to
me for personal service upon all the named Defendants.

Further, I'm asking that you please update the case summary documents that are listed on PACER to
show that there has been a correction made to the Defendant's name of "Eileen Potter" from "Eileen
Porter".

The Court's kindness in rushing back to me the revised documents for service of process on the
Defendants would be greatly appreciated. Also, I have enclosed a self-stamped-addressed, U.S. Priority
Mail envelope for your mailing purposes. Thank you for your attention to this matter.

Respectfully,

PATRICIA WOODS

Enclosures:     Amended Complaint
                Self-Stamped-addressed, U.S. Priority Mail envelope.

## P ROOF OF SERVICE

I declare that I am a resident in Clark County of Las Vegas, Nevada. I am over the age of 18 years and not a party to the within entitled cause. My name and the address of my residence is: Jennifer Champeau Las Vegas, Nevada 89119.

On June 8, 2017, I served the Letter dated June 5, 2017 from Patricia L. Woods to Clerk's Office, United States District Court for the Eastern District of California, Sacramento Division regarding Case Action No: 2:17-CV-00793-GEB AC PS on the parties listed below by:

_x_ placing a true copy thereof enclosed in a sealed envelope for collection and delivery by the United States Postal Service or private delivery service following ordinary business practices with postage or other costs prepaid.

Mark Gregersen
Public Employment Relations Board (PERB)
1031 18th Street
Sacramento, California 95811
(for named Defendant Public Employment Relations Board (PERB)
1031 18th Street
Sacramento, California 95811

J. Felix De La Torre
General Counsel
Public Employment Relations Board (PERB)
1031 18th Street
Sacramento, California 95811
(for the named Defendants
Wendi L. Ross, (PERB) and
Eileen Potter, PERB)

Scott Kernan
California Department of Corrections & Rehabilitation (CDCR)
1515 "S" Street, Room 502, South
Sacramento, California 95811
(for named Defendant California
Department of Corrections &
Rehabilitation (CDCR)

Office of Legal Affairs/Legal Counsel
General Counsel
California Department of Corrections & Rehabilitation (CDCR)
1515 "S" Street, Room 314, South
Sacramento, California 95811
(for the named Defendants Robert Storms, (CDCR) and
Larry Norris, (CDCR)

**P ROOF OF SERVICE (Page-2)**

Civil Complaint Division and
State Solicitor General Office,
EDWARD DUMONT, State
Solicitor General
Office of the Attorney General
State of California
1300 "I" Street
Sacramento, California 95814


     I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 8, 2017, at Las Vegas, Nevada.


*Jennifer Champeau*
    (Type or print name)


(Signature)
JENNIFER CHAMPEAU